In the Matter of the Application of HYMAN CAPLAN and Another, Respondents, for the Revocation of Letters of Administration Issued to SALLY CAPLAN on the Estate of MAX CAPLAN, Deceased, Appellant.*

In the Matter of the Judicial Settlement of the Account of SALLY CAPLAN, Removed Administratrix of the Estate of MAX CAPLAN, Deceased, Appellant.

HYMAN CAPLAN and Another, Respondents.

Third Department, July 1, 1932.

---

* Revg. 139 Misc. 142; affd., 260 N. Y. 674.

*Snyder & Freedman* [*John J. McManus* of counsel], for the appellant.

*Robert W. Fisher*, for the respondents.

RHODES, J. The decedent died intestate, leaving his widow, the appellant, and his father and mother, the respondents, as his next of kin. His estate consisted of a mortgage for $1,500 and a one-fourth interest in a copartnership. The copartnership was composed of decedent, his brother Simon, who owned a one-fourth interest, and his mother, Esther, who owned a one-half interest. His father, Hyman, had built up the business and was general manager, acting for Esther. The business comprised four small stores, located at Mechanicville, Ballston, Schuylerville and Hoosick Falls, dealing in ladies' dresses, coats and hats, the store in Mechanicville selling both men's and women's merchandise. While the undisputed testimony is that the book value of the business was $64,000, it was finally arranged in negotiations between the father of appellant and the respondent Hyman that decedent's estate should be sold to the surviving partnership for the sum of $5,000, in payment for which a series of notes should be given, the respond-

ent Hyman to be one of the makers on said notes. Subsequently said respondent Hyman acquired the interest of his wife, Esther, in the copartnership.

In order to carry out the transaction, the parties met in the office of an attorney, who prepared a petition and the necessary papers to procure the appointment of appellant as administratrix of decedent's estate. The attorney, apparently in good faith, but erroneously, advised the parties that the widow was entitled to the first $5,000 of the estate; that she would be entitled to one-half of the remainder, and that the father and mother were entitled to the other one-half the remainder. The parties believed and relied upon this advice. The respondents executed to the appellant assignments of their interest in the estate and waivers of citation; the appellant's petition was presented to the Surrogate's Court with affidavits reciting that there were no debts and that she was the sole party in interest, whereupon letters of administration were issued to her and she was not required to give a bond. Later, the respondents presented their petition to the Surrogate's Court asking that the letters issued to the appellant be revoked upon the ground that her appointment was obtained by false suggestion of a material fact made to the court by said administratrix relative to the interest of herself and the respondents in said estate, and that said waivers and assignments were obtained by fraud, misrepresentation and mistake as to the absence of any substantial interest in the estate; further, that by reason of said false suggestion the court dispensed with a bond of such administratrix and that since her appointment she had misappropriated such funds of the estate as came to her possession and applied the same to her own personal use and that she had declined and refused to apply the proceeds of such estate to the payment of the funeral expenses and other just and legal charges against the same.

After a hearing before the surrogate he revoked appellant's letters on the ground that the issuing thereof was obtained as the result of such false suggestion of fact. The decree of revocation also provided that the waivers and assignments executed by the respondents be canceled and annulled on the ground that they were obtained by fraud and misrepresentation as to the nature and extent of the interest of the respondents in said estate. Letters of administration were thereupon issued to George O. Slingerland, who thereafter presented to the court a petition asking that the appellant herein be required to account for her proceedings as such administratrix. Pursuant thereto the appellant accounted and a decree of the surrogate has been entered settling her accounts.

Sally Caplan, the former administratrix, has appealed from these

decrees and has also appealed from the order of the surrogate expunging from the proposed case on appeal a so-called colloquy occurring before the surrogate at the commencement of the hearing for revocation.

The appellant had interposed a written answer denying the allegations of fraud set forth in the petition filed on the application for revocation of her letters, and at the beginning of the hearing her attorney said: " Before we proceed with taking of testimony perhaps some little discussion might clear the issues and bring it down exactly to the particular features which should be contested here." Respondents' attorney then stated: " The question as to the assignments is not apparently raised by these papers on this proceeding. We are merely proceeding to determine whether or not this administratrix endeavored to deceive the court and naturally that would carry with it an intent to deceive so that her letters should be revoked and annulled and some one else appointed. The Surrogate: I think I have in mind the situation."

Inasmuch as the surrogate later, by decree, canceled and annulled these instruments, it is important to know what were the issues litigated. An examination of what was said indicates that the question of the canceling and annulling of the assignments and waivers was not to be litigated. The sole question which the parties intended to present to the court was whether or not the letters should be revoked because of a false suggestion of fact. The matter thus expunged from the record was, therefore, important and material and should have been included as a part of the record on appeal.

The evidence fails to disclose any misappropriation or misuse of the funds of the estate by the appellant. It also fails to disclose any intent to defraud or deceive the court or the respondents. It is apparent that when she made application for letters, she and the respondents believed the statements of their attorney as to their respective interests in the estate. There may have been a mutual mistake, either of fact or law, on the part of the contracting parties leading to the execution of the waivers and assignments of the respondents' interest to the appellant. Even if this be conceded, the record does not establish that the respondents were induced thereby to part with their interest or that it was the consideration therefor. The record indicates that the parties were negotiating for decedent's interest in the partnership; that in exchange for a transfer of that interest, appellant was to have whatever comprised decedent's estate. It is undisputed that decedent's interest in the partnership had a book value of $12,000. The respondents and the partnership were arranging to procure a transfer of such interest to

the survivors of the copartnership for $5,000, payment of which was to be evidenced by a series of notes. Neither is it satisfactorily established that the appellant intended to deceive the court or made a false suggestion when she stated that there were no outstanding claims against the estate. While it is disputed, the evidence in her behalf indicates that in the adjustment of affairs, the respondents agreed to pay the funeral expenses and outstanding bills. It is unquestioned that the decedent, before his marriage, had taken out a policy of insurance on his life in the sum of $1,000, payable to the respondent, his mother; that the appellant, after her marriage, helped pay the premiums on this policy. She claims that because the mother was to receive the money from this policy for which appellant had paid premiums, the respondents agreed to take care of the funeral expenses and other expenses of the estate. Respondents deny making such promise, but in any event, the facts do not justify the conclusion that the appellant perpetrated a fraud upon the court or upon respondents or intended so to do.

There is nothing to indicate that appellant is not a fit and proper person to be appointed administratrix. The law gives her that right to the exclusion of any one else. If letters were issued to her without the requirement of a bond and later it developed that a bond was desirable, the surrogate could have so ordered without revoking her letters.

Whether or not the assignments of respondents' interest to appellant should be set aside and they should participate in decedent's estate to the same extent as if the assignments had not been executed, we do not now determine for the reason that the parties expressly excluded that issue from the trial. They are, therefore, free to litigate that question in the future if they so desire.

The decree of revocation not being warranted by the facts, it follows that the order of the surrogate requiring appellant to account because of such revocation, was also unwarranted.

The decrees and order should be reversed on the law and facts, except that portion of the decree relating to the validity of the assignment, which is reversed on the law, no such issue having been litigated, and proceedings dismissed, with costs against the respondents personally.

All concur; McNAMEE, J., not voting.

Decrees and order reversed on the law and facts, except that portion of the decree relating to the validity of the assignment, which is reversed on the law, no such issue having been litigated, and proceedings dismissed, with costs against the respondents personally.